# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jackson National Life Insurance Company,

|  |  |
|---|---|
| Plaintiff, | Civ. No. 12-1406 (RHK/FLN) |
|  | **MEMORANDUM OPINION** |
|  | **AND ORDER** |
| v. |  |
| Catlin Specialty Insurance Company, |  |
| Defendant. |  |

Richard C. Kraus, Scott L. Mandel, Foster, Swift, Collins & Smith, P.C., Lansing, Michigan, Shane H. Anderson, Mychal A. Bruggeman, Mackall, Crounse & Moore, PLC, Minneapolis, Minnesota, for Plaintiff.

Robert E. Salmon, Andrew D. Deutsch, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In October 2011, Plaintiff Jackson National Life Insurance Company ("Jackson") obtained a judgment in this Court against Workman Securities Corporation ("Workman"). When the Judgment went unpaid, Jackson commenced the instant action against Defendant Catlin Specialty Insurance Company ("Catlin"), seeking a declaration that the Judgment is covered by an insurance policy Catlin had issued to Workman. Presently before the Court are the parties' cross-Motions for Summary Judgment. For the reasons that follow, the Court concludes that the Judgment is not covered by the policy and, accordingly, Catlin's Motion will be granted and Jackson's Motion will be denied.

# BACKGROUND

The key facts are undisputed. Jackson is an insurance company that issues, among other products, variable annuities.[1] In 2005, it entered into an agreement with Workman (the "Selling Agreement") pursuant to which Workman agreed to act as a "broker/dealer" selling Jackson's products. As part of that agreement, Workman represented that (1) all employees selling Jackson's products would be "duly registered with" Workman and (2) it would properly supervise all such "registered representatives." Workman also agreed to indemnify Jackson for, among other things, claims resulting from its (Workman's) failure to comply with the Selling Agreement and claims resulting from untrue or misleading statements made by registered representatives or negligence by Workman or its representatives in the course of selling Jackson's products.

In late 2005, an individual named Gayle Sanderson contacted Thomas Petracek, an investment adviser with whom she had previously worked, to seek retirement investment advice. Petracek recommended that Sanderson purchase a variable annuity issued by Jackson. At the time, he was not licensed to sell such a product, so he informed Sanderson that his "supervisor," Derrick Shields (who was Petracek's son-in-law and a Workman registered representative), would have to sign the paperwork. Sanderson eventually agreed to purchase the annuity, and as part of the transaction, Shields signed a document in which he certified that he had discussed the annuity with Sanderson and

---

[1] A variable annuity is "a contract between [an individual] and an insurance company, under which the insurer agrees to make periodic payments to [the individual], beginning either immediately or at some future date. [One] purchase[s] a variable annuity contract by making either a single purchase payment or a series of purchase payments." http://www.sec.gov/investor/pubs/varannty.htm (last visited August 21, 2013).

knew of her investment goals. These statements were false. Nevertheless, Workman submitted Sanderson's application to Jackson, including the document containing Shields's misrepresentations, and Jackson accepted it and issued the annuity in January 2006. Sanderson's initial investment in the annuity totaled nearly $1.1 million.

In late 2008, Sanderson wrote to Jackson demanding the return of her investment, plus interest. She asserted that before purchasing the annuity, Petracek had informed her that its value would never drop below the amount of her initial investment, but she had discovered that it was then worth well below that amount. She also expressed concern that Petracek was not registered with Workman at the time of the annuity's sale. Jackson contacted Workman, which confirmed that Petracek was not registered with Workman when the annuity was sold. As a result, and because of Shields's misrepresentations and the fact that Jackson did not know what Petracek had represented to Sanderson before she purchased the annuity, Jackson agreed to rescind the annuity and refund Sanderson's initial investment, resulting in a loss of slightly more than $360,000 (the annuity's decline in value).

Jackson then sought to recoup its loss from Workman. In April 2009, it commenced an action against Workman in this Court (the "Prior Action"), which was assigned to the Honorable John R. Tunheim. Jackson eventually filed a five-count Second Amended Complaint, asserting among other things that Workman had breached the Selling Agreement by refusing to indemnify it for the losses it had sustained (Count I) and by failing to properly supervise Shields and Petracek (Count II); it also alleged that

Workman was negligent (Count IV).[2] The parties undertook discovery and, in July 2010, cross-moved for summary judgment. On March 17, 2011, Judge Tunheim determined that Jackson was entitled to judgment in its favor on Counts I and II, the breach-of-contract claims, and that fact issues rendered summary judgment inappropriate on the remaining claims. Jackson then voluntarily dismissed those remaining claims, including the negligence claim, and Judgment was entered in its favor on Counts I and II in the amount of $617,786.47, comprising its loss on Sanderson's annuity, attorneys' fees and costs, and pre-judgment interest.

In June 2012, Jackson commenced the instant action against Catlin, Workman's insurer at the time Sanderson purchased the annuity, alleging that the Judgment was covered by Catlin's policy. Catlin denied coverage and further asserted that even if the policy facially applied to the Judgment, several exclusions posed insuperable bars to recovery. With discovery complete, the parties now cross-move for summary judgment. Their Motions have been fully briefed, the Court heard argument on July 31, 2013, and the Motions are ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042

[2] The remaining claims in the Prior Action are irrelevant to the Court's analysis here.

(8th Cir. 2011) (*en banc*); <u>Whisenhunt v. Sw. Bell Tel.</u>, 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. <u>Beard v. Banks</u>, 548 U.S. 521, 529-30 (2006); <u>Weitz Co., LLC v. Lloyd's of London</u>, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); <u>Wood v. SatCom Mktg., LLC</u>, 705 F.3d 823, 828 (8th Cir. 2013).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering the Jackson's Motion, the Court views the record in the light most favorable to Catlin, and when considering Catlin's Motion, the Court views the record in the light most favorable to the Jackson. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." <u>Seaworth v. Messerli</u>, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), <u>aff'd</u>, 2011 WL 873121 (8th Cir. Mar. 15, 2011).

## ANALYSIS

State law governs the interpretation of insurance policies. <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.</u>, 346 F.3d 1160, 1164 (8th Cir. 2003). Under Minnesota law,[3] interpretation of an insurance policy is a question of law for the Court.

---

[3] The parties dispute whether Minnesota law or New York law, which is designated in Catlin's policy, applies in this case. But the parties *agree* that Minnesota law and New York law are in

- 5 -

<u>Watson v. United Servs. Auto. Ass'n</u>, 566 N.W.2d 683, 688 (Minn. 1997).  When policy

language is unambiguous, it is interpreted "in accordance with its plain and ordinary

meaning."  <u>Ill. Farmers Ins. Co. v. Glass Serv. Co.</u>, 683 N.W.2d 792, 799 (Minn. 2004).

The Court must construe the policy as a whole, <u>Watson</u>, 566 N.W.2d at 693, and

"ascertain and give effect to the intentions of the parties as reflected in the terms of the"

policy, <u>Jenoff, Inc. v. N.H. Ins. Co.</u>, 558 N.W.2d 260, 262 (Minn. 1997).

    The parties agree that Jackson bears the burden of establishing coverage for the

Judgment in the Prior Action (Pl. Mem. in Supp. at 15; Def. Mem. in Supp. at 18), which

"does not turn on the pleadings" in that case, but rather on "the actual basis of

[Workman's] liability" as adjudged by Judge Tunheim.  (Pl. Mem. in Supp. at 15.)  In

other words, resolution of this case requires the Court to compare the policy's terms with

the basis for liability imposed in the Prior Action.  Having carefully done so, the Court

concludes that the pertinent policy terms are unambiguous and, under those terms, no

coverage exists for the Judgment.

    The relevant policy language provides that Catlin "shall pay, on behalf of an

**Insured, Damages** which the **Insured** becomes legally obligated to pay because of a

**Claim** that is . . . made against the **Insured** . . . for a **Wrongful Act** committed solely in

the rendering or failing to render **Professional Services** for a **Client**."  The policy defines

each bolded term in this clause, and the parties' primary dispute concerns whether

---

accord in all relevant respects.  (<u>See</u> Pl. Reply at 1 (acknowledging that "New York and
Minnesota law do not conflict"); Def. Mem. in Supp. at 14.)  Accordingly, the Court will apply
Minnesota law here.  <u>See, e.g.</u>, <u>Glover v. Merck & Co.</u>, 345 F. Supp. 2d 994, 997 (D. Minn.
2004) (Rosenbaum, J., adopting Report & Recommendation of Noel, M.J.) (no choice-of-law
analysis necessary where two states' laws do not conflict).

Jackson falls within the definition of the term "Client," that is, "an individual, company or entity for whom or which an **Insured** renders **Professional Services** to gain monetary compensation."

Seizing on the word "for" in this definition, Jackson argues that it was Workman's "Client" because Workman sold variable annuities and other products *for* Jackson.  (Pl. Mem. in Supp. at 21 ("A broker/dealer . . . sell[s] and service[s] insurance and annuity products *for* the issuing insurer.  In this case, Workman's professional services included selling annuities *for* Jackson.") (emphases in original).)  Catlin responds that Jackson was not Workman's "Client," but rather *Sanderson* was.  It points out that much of the policy's language would make no sense if Catlin rather than Sanderson were the "Client." (See, e.g., Def. Mem. in Supp. at 24 (noting the policy's discussion of "Client financial needs," "Client funds," and "Investment of the Client's assets," all of which would be stripped of meaning if Jackson were Workman's "Client").)  And it notes that under Jackson's interpretation of the policy, Sanderson would <u>not</u> be a "Client" because Workman sold the annuity *to* her (not *for* her), yet Jackson and Workman repeatedly referred to Sanderson as Workman's client in the Prior Action and in the investigation leading up to that lawsuit.

While the Court is inclined to agree that Catlin has the better of these arguments, ultimately it need not wade into this dispute in order to resolve this case.  Assuming *arguendo* that Jackson fits within the policy's definition of "Client," its claims still fail because Workman's liability did not arise out of "the rendering or failing to render Professional Services," which is a prerequisite to coverage under the policy.

In the Prior Action, Judge Tunheim determined that Workman had failed to indemnify Jackson and had failed to supervise its employees, in violation of covenants in the Selling Agreement. In other words, liability in the Prior Action was predicated on Workman's breach of the Selling Agreement with Jackson. This is simply not "the rendering or failing to render Professional Services." With regard to a broker/dealer such as Workman, the policy defines "Professional Services," in pertinent part, as "the supervision of conduct or activities [by employees], *in accordance with statutes, regulations or procedures established by governmental or self-regulatory authorities . . . or duties imposed under common law*." (emphasis added). But Workman's liability in the Prior Action was not based on the violation of governmental regulations or common-law duties. Rather, it was based upon obligations it owed to Jackson *under the Selling Agreement*.[4] Because the Judgment was predicated solely on breaches of the Selling Agreement and not on any other conduct, it did not arise out of "the rendering or failing to render Professional Services" and is not covered.

Jackson responds that its claims in the Prior Action were based on the misconduct of Shields, a Workman registered representative who (in addition to Workman) also was an "Insured" under the policy. (Pl. Reply at 3-4.) It argues that coverage exists because "Workman became legally obligated to pay damages because of the claim Jackson made against Workman, [which] was based on a 'wrongful act' committed by Shields . . . in the rendering of 'professional services.'" (Id. at 4.)

_____

[4] Notably, Jackson had asserted a negligence claim in the Prior Action but voluntarily dismissed it, undermining any claim based on common-law duties.

But there are at least two problems with this argument. First, the Judgment in the Prior Action was not "based on a wrongful act committed by Shields," but rather based on *Workman's* wrongful conduct, namely, its failure to supervise Shields (in contravention of the Selling Agreement).

Second, and more importantly, Jackson's argument misreads the policy's language. The policy obligates Catlin to pay "on behalf of an insured, Damages which *the* Insured becomes legally obligated to pay because of a Claim that is . . . made against *the* Insured . . . for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client." (emphases added). The policy's use of the definite article "the" is critical. Damages were awarded in the Prior Action against Workman and Workman alone; Shields was not a party to that action. Jackson now seeks a determination that Catlin is required to pay the Judgment "on behalf of" *that* insured (Workman). But the policy makes clear that Catlin must cover damages only for a "Wrongful Act" committed in the rendering of "Professional Services" by "*the* Insured." Unlike "a" or "an," the definite article "the" "suggests specificity." Noel Canning v. NLRB, 705 F.3d 490, 500 (D.C. Cir. 2013), cert. granted, 133 S. Ct. 2861 (June 24, 2013). Such specificity indicates that "*the* Insured" means the one "legally obligated to pay," that is, Workman.

Accordingly, whether *Shields* rendered "Professional Services" to Sanderson, Jackson, or anyone else is irrelevant. In order for coverage to exist for the Judgment in the Prior Action, which was entered only against Workman, liability must be predicated on "Professional Services" rendered *by Workman* – that is, "*the* Insured" now "legally

obligated to pay."  Jackson is simply wrong in arguing that the policy "does not require that the claim . . . be brought against the same insured who committed the wrongful act." (Pl. Reply at 4.)  And it cannot create coverage here by asserting that the conduct of one "Insured" (Shields) supports the liability of another "Insured" (Workman).

For these reasons, the Judgment in the Prior Action does not fall within the policy's ambit, and hence the Court need not consider Catlin's alternative arguments that coverage is barred by several policy exclusions.  Nor must the Court consider the parties' arguments regarding coverage for attorneys' fees and costs.  Simply put, Catlin is not obligated to satisfy any component of the Judgment.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Jackson's Motion for Summary Judgment (Doc. No. 49) is **DENIED**, Catlin's Motion for Summary Judgment (Doc. No. 57) is **GRANTED**, and Jackson's Amended Complaint (Doc. No. 7) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 26, 2013                          s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge